# THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| MICHELLE OLSEN,<br><br>Plaintiff,<br><br>v.<br><br>DAVIS COMMUNITY HOUSING AUTHORITY,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING [8] DEFENDANT'S MOTION TO DISMISS<br><br>Case No. 1:22-cv-00039-DBB<br><br>District Judge David Barlow<br><br>Magistrate Judge Cecilia M. Romero |

Plaintiff Michelle Olsen ("Ms. Olsen") filed this action against Defendant Davis Community Housing Authority ("DCHA") challenging DCHA's termination of her Section 8 housing benefits.[1] On June 9, 2022, DCHA filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) asking this court to dismiss the Complaint for failure to state a claim upon which relief may be granted.[2] Ms. Olsen opposed the motion,[3] and DCHA replied in support.[4] Having reviewed the parties' briefing, the court concludes that the motion may be resolved without oral argument.[5] For the reasons set forth below, DCHA's motion to dismiss is granted.

---

[1] Compl., ECF No. 4, filed March 11, 2022.
[2] Def.'s Mot. to Dismiss, ECF No. 8, filed June 9, 2022.
[3] Pl.'s Resp. to Mot. to Dismiss, ECF No. 12, filed June 30, 2022.
[4] Def.'s Reply in Supp., ECF No. 15, filed July 14, 2022.
[5] *See* DUCivR 7-1(g).

## I. BACKGROUND

### A. Section 8 Statutory and Regulatory Framework

The United States Housing Act of 1937 established the Section 8 housing program to help low-income individuals and families secure affordable housing.[6] The program is funded by the United States Department of Housing and Urban Development ("HUD"). HUD contracts with state and local public housing agencies ("PHAs") and pays the PHAs for rental assistance payments that PHAs make to landlords on behalf of Section 8 participants.[7] In return, PHAs agree to administer Section 8 programs in accordance with the requirements of the Housing Act and its implementing regulations.[8] DCHA is a PHA doing business in Davis County, Utah.[9]

### B. DCHA's Termination of Ms. Olsen's Section 8 Benefits[10]

On September 26, 2019, Ms. Olsen, a nine-year participant in the Section 8 voucher program, received written notice from DCHA of a required biannual inspection of her residence.[11] The Inspection Notification scheduled an inspection for November 7, 2019, between 9 a.m. and 12 p.m., and expressly stated: "[I]f you cannot be present for the inspection, you must

---

[6] 42 U.S.C. § 1437f(a); *see Cisneros v. Alpine Ridge Grp.*, 508 U.S. 10, 12 (1993) (explaining that Section 8 originated in the Housing and Community Development Act of 1974 which amended the United States Housing Act of 1937).
[7] *See* 42 U.S.C. § 1437f(b)(1), (o)(1)(A); *see also* 24 C.F.R. § 982.1(a)(1).
[8] 24 C.F.R. § 982.52 (HUD requirements).
[9] ECF No. 4, ¶ 2.
[10] Because the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff," the factual background comes from Ms. Olsen's Complaint and the documents attached thereto. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) ("[N]otwithstanding the usual rule that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, the district court may consider documents referred to in the complaint if they are central to plaintiff's claim and the parties do not dispute their authenticity.") (quotation and citation omitted). The court did not consider the documents DCHA attached to the Motion to Dismiss and Reply.
[11] ECF No. 4, ¶ 6.

arrange for a person (age 18 or older) to be at the rental unit."[12] The Inspection Notification also stated that "[t]wo missed inspections will result in termination of voucher rental assistance."[13]

Ms. Olsen missed the November 7 inspection.[14] That same day, DCHA issued a Second Inspection/Termination Notice to Ms. Olsen stating that her rental unit failed an inspection on November 7, 2019.[15] The Second Inspection/Termination Notice provided the following reasons for the failed inspection: the "tenant was a no show" for the inspection; the front yard was found to be littered; there were two unlicensed vehicles on the premises; and the "front porch ha[d] a trip hazard."[16] The November 7 Second Inspection/Termination Notice reiterated that two missed inspections would result in the termination of Ms. Olsen's rental assistance. It also reminded Ms. Olsen that the Housing Quality Standards Inspection "must be completed as part of program compliance," and indicated that "[a]t this time, [Ms. Olsen] is out of compliance . . . ."[17] The Notice concluded by stating:

> Under HUD regulations, it is necessary that we advise you of your rights involving your participation with the Housing Choice Voucher Rental Assistance Program. If you do not agree with this notice, you may request an informal hearing. You will need to submit a written request to the Executive Director within ten (10) business days from the above date.[18]

On November 19, 2019, DCHA sent another Quality Standards Second Inspection/Termination Notice to Ms. Olsen.[19] The November 19 Notice repeated the information from the November 7, 2019 Notice. It re-stated that Ms. Olsen had failed the

---

[12] *Id.*; Inspection Notification dated Sept. 26, 2019, ECF No. 4-1.
[13] *Id.*
[14] ECF No. 4, ¶ 7.
[15] HQS Second Inspection/Termination Notice dated Nov. 7, 2019, ECF No. 4-3.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] HQS Second Inspection/Termination Notice dated Nov. 19, 2019, ECF No. 4-4.

November 7 inspection and recited the same four reasons for the failed inspection: Ms. Olsen was a no show for the inspection; the front yard was found to be littered; there were two unlicensed vehicles on the premises; and the front porch had a trip hazard.[20] The November 19 Notice scheduled an inspection for December 3, 2019. The Notice expressly stated: "If the unit cannot be accessed at this second inspection" Ms. Olsen's "rental assistance will be terminated . . . on December 31, 2019."[21] The November 19 Notice reminded Ms. Olsen, again, that "inspection must be completed as part of program compliance," and that "[a]t this time, [Ms. Olsen] is out of compliance."[22] The Notice concluded with the same language as the November 7, 2019 Notice, informing Ms. Olsen that if she did not agree with the Notice, she could request an informal hearing by submitting a written request "within ten (10) business days from [November 19, 2022]."[23]

Although the Complaint is silent as to what occurred between November 19, 2019, and December 30, 2019, the documents attached to the Complaint indicate that at some point between November 19 and December 24, 2019, and presumably after the inspection scheduled for December 3, 2019, Ms. Olsen learned that DCHA would be terminating her Section 8 housing benefits.[24] Additionally, the attached documents confirm that at some point between November 19 and December 24, 2019, Ms. Olsen requested an informal hearing to appeal the termination of her Section 8 housing benefits.[25]

---

[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *See* Letter re: Informal Hearing dated Dec. 24, 2019, ECF No. 4-5; Informal Hearing Decision dated Jan. 2, 2020, ECF No. 4-6. Neither party disputes the authenticity of the documents Ms. Olsen attached to the Complaint.
[25] *See* ECF No. 4; ECF No. 4-4.

By letter dated December 24, 2019, DCHA confirmed receipt of Ms. Olsen's request for an informal hearing and set a hearing date of December 30, 2019.[26] The December 24, 2019 letter explained Ms. Olsen's rights regarding the hearing. These rights included, among others: the right to have legal counsel present; the right to examine and copy, prior to the hearing, any housing authority documents that may be relevant to the hearing; and the right to present evidence and question witnesses.[27]

On December 30, 2019, as scheduled, hearing officer Mary Swanstrom conducted Ms. Olsen's informal hearing. Shortly thereafter, on January 2, 2020, Ms. Swanstrom issued a written Informal Hearing Decision upholding DCHA's decision to terminate Ms. Olsen's Section 8 housing benefits.[28] The written decision stated the reason for terminating Ms. Olsen's benefits as "failure to complete your inspection as required by Housing Choice Voucher Rules."[29] In the written decision, Ms. Swanstrom explained that prior to reaching this conclusion, she "completed a careful review" of the "notes made during [their] discussion" at the December 30 hearing, and she reviewed the "supporting documents in [Ms. Olsen's] file."[30] Additionally, in order "to determine whether the housing authority followed proper procedure in deciding to terminate" Ms. Olsen's Section 8 housing benefits, Ms. Swanstrom reviewed the "applicable sections of the Code of Regulations and DCHA policy."[31] Ms. Swanstrom stated that, based on the foregoing information and review, she determined that "DCHA acted in accordance with the applicable

---

[26] ECF No. 4-5.
[27] Id.
[28] ECF No. 4-6.
[29] Id.
[30] Id.
[31] Id.

HUD/DCHA regulations and policies."[32] And, therefore, Ms. Swanstrom agreed with the housing authority's decision to terminate Ms. Olsen's Section 8 benefits for failure to complete the inspection as required by the applicable rules.[33]

Approximately two years later, on March 11, 2022, Ms. Olsen filed this lawsuit against DCHA. The Complaint focuses on the hearing officer's written decision terminating Ms. Olsen's Section 8 housing benefits and alleges that it failed to "give reasons for the termination," failed to "refer specifically to any documents," and failed to state the evidence that was relied on or produced."[34] According to the Complaint, these deficiencies in the written decision violated Ms. Olsen's right to procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution and "failed to comply with federal law and regulation."[35]

On June 9, 2022, DCHA moved to dismiss the Complaint arguing that it fails to state a plausible claim for relief because the hearing officer's written decision, while succinct, satisfied Constitutional and regulatory procedural requirements.[36]

---

[32] *Id.*
[33] *Id.*
[34] ECF No. 4, ¶¶ 15, 18, 19.
[35] *Id.* at 7, ¶ 2. Although the Complaint lists two separate causes of action—one for "violation of due process" and one for "violation of 42 U.S.C. § 1983"—both causes of action refer to the violation of Constitutional, regulatory and/or statutory due process. *See id.* at 4–7.
[36] *See* ECF No. 8 at 7–9 (discussing compliance with federal regulations); ECF No. 15 at 5 (discussing compliance with procedural due process requirements as set forth by the Supreme Court in *Goldberg v. Kelly*, 397 U.S. 254 (1970)). Relying on the Governmental Immunity Act of Utah ("GIAU"), Utah Code Ann. § 63G-7-101 *et seq.*, DCHA also argues that the Complaint should be dismissed because: (1) as a governmental entity performing a governmental function, it is immune from § 1983 actions; (2) Ms. Olsen failed to provide DCHA with a Notice of Claim within one year of the claim arising as required by the GIAU; and (3) even if Ms. Olsen filed a timely Notice of Claim, the Complaint was not filed within the applicable two-year statute of limitations. *See* ECF No. 8 at 2, 10–12; ECF No. 15 at 4. DCHA's arguments based on the GIAU were not developed and can be summarily rejected. In general, state governmental immunity statutes do not apply to suits brought under § 1983. *Martinez v. California*, 444 U.S. 277, 284 n.8 (1980). Thus, the GIAU's Notice of Claim requirement does not operate as a bar to the claims in this case. *Jenkins v. Utah County Jail*, No. 2:11-cv-761-RJS, 2015 WL 164194, at *20 (D. Utah Jan. 13, 2015); *see Felder v. Casey*, 487 U.S. 131, 141 (1988). Moreover, the applicable statute of limitations for an action under § 1983 is the four-year residual statute of limitations for personal injury actions. *See Mismash v. Murray City*, 730

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter accepted as true, to 'state a claim to relief that is plausible on its face.'"[37] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[38] The factual allegations must be enough to raise a right to relief above the speculative level."[39] Although the "usual rule" is that a court should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion to dismiss, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[40]

## III. DISCUSSION

The Complaint alleges that the hearing officer's written decision terminating Ms. Olsen's Section 8 benefits was deficient and violated her right to procedural due process under the Fourteenth Amendment to the United States Constitution, federal law, and regulation. Although the Complaint fails to identify the specific federal statute and regulation DCHA allegedly violated, it can reasonably be understood as alleging the violation of 42 U.S.C. § 1437d(k) of the Housing Act (which calls for regulations implementing procedural protections for Section 8 tenants, including the right to a written decision in subsection (6)) and its corresponding

---

F.2d 1366, 1367 (10th Cir. 1984). Ms. Olsen's Complaint was filed on March 11, 2022, well within the four-year statute of limitations.
[37] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[38] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).
[39] *Twombly*, 550 U.S. at 550.
[40] *Alvarado*, 493 F.3d at 1215; *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

regulation, 24 C.F.R. § 982.555(e)(6) (stating the basic requirements for the written decision).[41] Because the parties' arguments regarding the alleged constitutional, statutory, and regulatory due process violations overlap, the court follows the parties' approach and considers the substance of Ms. Olsen's claims together. However, before addressing the sufficiency of the substantive allegations, the court considers, as a preliminary issue, the legal basis for Ms. Olsen's claims.

### A.     Legal Basis for Claims

#### 1.     Constitutional Procedural Due Process

First, with respect to Ms. Olsen's constitutional claim, the Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law."[42] The first inquiry in every procedural due process challenge is: "Did the individual possess a protected interest to which due process protection was applicable?"[43]

In *Goldberg v. Kelly*, the United States Supreme Court held that welfare recipients have a property interest in continued benefits and that procedural due process requirements must be applied before those benefits may be terminated.[44] Following *Goldberg*, federal courts have uniformly recognized that "*Goldberg*'s principles apply to subsidized housing benefits," and therefore certain constitutional procedural protections must be afforded to participants before

---

[41] 42 U.S.C. § 1437d(k) generally provides that HUD shall, by regulation, require public housing agencies to implement a grievance procedure under which tenants will: (1) be advised of the specific grounds of any proposed adverse public housing agency action; (2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (1) of this section; (3) have an opportunity to examine any documents or records or regulations related to the proposed action; (4) be entitled to be represented by another person of their choice at any hearing; (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and (6) be entitled to receive a written decision by the public housing agency on the proposed action.
[42] U.S. Const. amend. XIV, § 1.
[43] *Ward v. Anderson*, 494 F.3d 929, 934 (10th Cir. 2007).
[44] *Goldberg v. Kelly*, 397 U.S. 254, 269–70 (1970).

their Section 8 benefits can be terminated.[45] Accordingly, the court finds, and the parties do not dispute, that Ms. Olsen's continued participation in the Section 8 housing program is a constitutionally protected property interest to which due process protection applies.

### 2. Statutory and Regulatory Due Process

In addition to alleging a violation of the Due Process Clause under the Fourteenth Amendment to the United States Constitution, the Complaint alleges that the hearing officer's written decision violated procedural protections set forth in the Housing Act and its implementing regulations. Section 1983 creates a remedy for the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States.[46] "In order to seek redress through § 1983 . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*."[47] Therefore, to bring a § 1983 claim for a violation of a federal right not secured by the Constitution, a plaintiff must identify the violation of a substantive right that has been created by federal statute.[48]

The parties do not address whether the procedural protections identified in 42 U.S.C. § 1437d(k) or 24 C.F.R. § 982.555(e)(6) give Section 8 participants like Ms. Olsen procedural rights that can be privately enforced via § 1983. The United States Court of Appeals for the Tenth Circuit has not addressed the issue, and courts that have considered the subject have reached

---

[45] *See Brantley v. West Valley City Hous. Auth.*, No. 2:08-cv-573-DAK, 2009 WL 301820, at *3 (D. Utah Feb. 4, 2009) (unpublished) (citing *Caulder v. Durham Hous. Auth.*, 433 F.2d 998, 1003–04 (4th Cir. 1970) and *Escalera v. New York Hous. Auth.*, 425 F.2d 853, 861 (2d Cir. 1970)); *see Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180, 184 (6th Cir. 1984) (collecting cases).
[46] 42 U.S.C. § 1983.
[47] *Blessing v. Freestone*, 520 U.S. 329, 340 (1997) (emphasis in original).
[48] *See Baker v. McCollan*, 443 U.S. 137, 140 (1979) (providing that the first inquiry in any § 1983 claim is whether plaintiff has been deprived of a right secured by the Constitution and laws of the United States); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) (providing that § 1983 does not alone create substantive rights; rather § 1983 merely provides a mechanism for enforcing individual rights secured elsewhere, i.e., rights independently secured by the Constitution and laws of the United States).

different conclusions.[49] In this case, the court need not decide the question because even if the court were to assume, without deciding, that 42 U.S.C. § 1437d(k)(6) and 24 C.F.R. § 982.555(e)(6) afforded procedural rights that could be enforced via § 1983, the hearing officer's written decision satisfied those procedural rights.[50]

### B. The Substantive Allegations Fail to State a Plausible Claim for Relief

In *Goldberg v. Kelly*, the United States Supreme Court held that in order to satisfy procedural due process, proceedings to terminate public assistance must afford the participant the following: (1) "timely and adequate notice detailing the reasons for the proposed termination," (2) an opportunity to appear at a pre-termination hearing, to present evidence, and to confront and cross-examine witnesses, (3) an opportunity to retain counsel, (4) a decision based "solely on the legal rules and evidence adduced at the hearing," which "state[s] the reasons for [the] determination and indicate[s] the evidence [the decision maker] relied on," and (5) an impartial decision maker.[51] Plaintiff does not dispute that factors one, two, three, and five were met. She argues only that the fourth factor was not satisfied.

Regarding the specific procedural requirements for a hearing officer's written decision, the *Goldberg* Court instructed:

---

[49] Several courts have recognized a private right of action under § 1983 for the violation of 24 U.S.C. § 1437d(k) or regulations adopted pursuant to § 1437d(k). *See, e.g., Fields v. Omaha Hous. Auth.*, No. 8:04-cv-554, 2006 WL 176629, at *2 (D. Neb. 2006) (unpublished) (collecting cases in support of proposition that the "violation of a regulation adopted pursuant to § 1437d(k) is actionable under § 1983"). However, others have declined to recognize a private right of action under § 1983 absent proof that the regulation in question further defines or "fleshes out the content of" a right created by the statute. *See, e.g., Yarbrough v. Decatur Hous. Auth.*, 931 F.3d 1322, 1326 (11th Cir. 2019) (en banc) (overruling prior decision and concluding that § 1437d(k)(6) of the Housing Act and 24 C.F.R. § 982.555(e)(6) do not create a right enforceable by § 1983 to a termination decision made by a preponderance of the evidence because the statute entitles tenants to a "written decision," not a "properly" written decision or a "well-reasoned" decision, and the regulation's reference to a preponderance standard neither defines nor elaborates on the meaning of a "written" decision).
[50] *See Burks v. Lasker*, 441 U.S. 471, 476 (1979) (providing that whether a cause of action exists is not a question of jurisdiction and, therefore, the existence of a cause of action may be assumed without being decided).
[51] 397 U.S. 254, 266–71 (1970).

> The decision maker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied on, though his statement need not amount to a full opinion or even formal findings of fact and conclusions of law.[52]

The Housing Act and corresponding regulations afford similar procedural protections for Section 8 tenants.[53] Section 1437d(k)(6) of the Housing Act provides, simply, that a tenant is "entitled to receive a written decision by the public housing agency on the proposed action."[54] The corresponding regulation, 24 C.F.R. § 982.555(e)(6), requires:

> The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decision. Factual determinations relating to the individual circumstances of a family shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the family.[55]

Ms. Olsen argues that the written decision in this case does not satisfy these procedural requirements because it fails to "give reasons for the termination of assistance and does not refer specifically to any documents or evidence produced at the hearing, nor does it give reasons for the termination based on presented evidence."[56] To support her argument that due process requires reference to specific documents, facts, and evidence, Ms. Olsen relies heavily on *Brantley v. West Valley City Housing Authority*.[57]

---

[52] *Id.* at 271 (internal citations omitted).
[53] *See Clark v. Alexander*, 85 F.3d 146, 150–51 (4th Cir. 1996) ("Federal regulations set out the basic procedural requirements of informal hearings in almost literal compliance with *Goldberg*."); *see also Anderson v. Lowell Hous. Auth.*, No. 11-10580, 2012 WL 3965112, at *10–11 (D. Mass. Aug. 24, 2012) (unpublished) (describing HUD regulations promulgated under the Housing Act, which "essentially codifie[d] the *Goldberg* criteria for hearings with respect to low-income housing benefits").
[54] 42 U.S.C. § 1437d(k)(6).
[55] 24 C.F.R. § 982.555(e)(6).
[56] ECF No. 4, ¶ 18.
[57] *Brantley v. West Valley City Hous. Auth.*, No. 2:08-cv-573-DAK, 2009 WL 301820 (Feb. 4, 2009) (unpublished).

But *Brantley* has very different facts. In *Brantley*, the plaintiff, a Section 8 housing participant, got into an altercation with another tenant. Plaintiff's gun discharged during the altercation and plaintiff was charged with two counts of aggravated assault.[58] The incident resulted in the termination of plaintiff's Section 8 benefits and plaintiff sued the housing authority asserting that his benefits were terminated without due process. The housing authority moved for judgment on the pleadings and claimed that plaintiff's benefits were properly terminated because plaintiff violated an ordinance prohibiting the discharge of a gun in city limits.[59] The court denied the housing authority's motion for judgment on the pleadings finding that there were "far too many factual questions relevant to whether [the housing authority] provided [p]laintiff with due process" in terminating his benefits.[60]

The court in *Brantley* noted that although the housing authority claimed in the lawsuit that it terminated plaintiff's benefits based on his discharge of a gun in city limits, the termination notices that plaintiff received throughout the process indicated that his benefits were being terminated because of plaintiff's charges and/or conviction for aggravated assault.[61] The court also noted that plaintiff was not charged with violating the ordinance prohibiting the discharge of a gun in city limits, and because the violation of that ordinance was never discussed, plaintiff never had an opportunity to defend against it.[62]

With regard to the hearing and written decision, the court noted that the ordinance violation for discharging a gun in city limits was never "specifically addressed in the hearing or

---

[58] *Id.* at *1.
[59] *Id.* at *4.
[60] *Id.* at *6.
[61] *Id.* at *4.
[62] *Id.* at *5.

12

[the] decision to uphold termination."[63] At the hearing, the housing authority and hearing officer acknowledged only that there were "criminal charges" pending against plaintiff, and without identifying evidence or police reports, the housing authority took the position that "the state criminal proceedings met the preponderance of the evidence requirement."[64] According to the court, the hearing officer relied "only on these conclusory statements" as the basis for the decision, and the hearing officer summed up the hearing in a single sentence, stating that the termination of housing assistance was being upheld "based on the documentation and housing authority violations."[65] In denying the housing authority's motion for judgment on the pleadings, the court questioned, among other things, the sufficiency of the written decision. The court noted that although the written decision made "reference to documentation," it did not "identify anything in particular," and it did not "apply the facts" or "mention plaintiff's arguments."[66] Consequently, the court determined that the written decision "appear[ed] to fall short of the due process standards."[67]

---

[63] *Id.* at *4–5.
[64] *Id.* at *6.
[65] *Id.* at *3.
[66] *Id.* at *6.
[67] *Id.*; Ms. Olsen also relies on three cases cited by the court in *Brantley*: *Costa v. Fall River Housing. Auth.*, 903 N.E.2d 1098 (Mass. 2009), *Driver v. Housing Auth. of Racine County*, 713 N.W.2d 670 (Wisc. Ct. App. 2006), and *Edgecomb v. Housing Auth. of Town of Vernon*, 824 F. Supp. 312 (D. Conn. 1993). However, like *Brantley*, and unlike the case at bar, these cases have complex facts involving allegations of criminal conduct combined with vague or generic pretermination notices and written decisions that fail to identify the specific conduct on which the decision is based. *See Costa,* 903 N.E.2d at 1112–13 (providing that termination decision based on generic reference to criminal activity described in "police report … of your arrest" and a subsequent newspaper article was insufficient; grievance panel was required to identify, at least in brief form, which specific criminal activity provided the basis for termination, and whether the particular criminal activity identified "threatened the health, safety or right to peaceful enjoyment" of other residents); *Driver*, 713 N.W.2d at 673, 677 (concluding that pretermination notice stating your benefits are being terminated because "you violated your family obligation under the Section 8 . . . program" and written decision stating that "your assistance is being terminated" because "you violated your tenant responsibility" were inadequate); *Edgecomb,* 824 F. Supp. at 315–16 (providing that notice of termination for engaging in "drug-related criminal activity or violent criminal activity, including criminal activity by any family member" and written decision's conclusory statement that termination was based on "evidence that indicated that a family member engaged in drug related activity while on the Section 8 Program" was insufficient).

Unlike *Brantley*, where the hearing officer's application of facts or reference to particular documents or evidence might have illuminated the real reason for the housing authority's termination decision (discharging a gun in city limits versus aggravated assault), the allegations and facts in this case are straightforward. The facts leading up to the termination decision are essentially undisputed, and the stated basis for the termination of Ms. Olsen's Section 8 housing benefits – failure to complete inspection as required by Housing Choice Voucher Rules – remained consistent throughout the notice process and in the written decision. Although Ms. Olsen takes issue with the brevity of the hearing officer's written decision, the additional details she argues are required to satisfy due process are, in this case, unnecessary to explain the basis for the termination decision.[68] Considering the facts and allegations in the Complaint, the hearing officer's written decision satisfies the basic due process requirements of *Goldberg*, 42 U.S.C. § 1437d(k)(6), and 24 C.F.R. § 982.555(e)(6).

First, the written decision clearly and expressly provides the reason for DCHA's decision to terminate benefits. The hearing officer explicitly states that she agrees with the housing authority's decision to terminate Ms. Olsen's benefits for "failure to complete your inspection as required by Housing Choice Voucher Rules."[69] Based on this plain language, Ms. Olsen cannot genuinely contend that the written decision did not supply the reason for the termination decision. The written decision also identifies the information on which the decision was based,

---

[68] *See generally Matthews v. Eldridge*, 424 U.S. 319, 334 (1976) (providing that the protections necessary to satisfy the Due Process Clause vary depending on the time, place, and circumstances of the deprivation). Ms. Olsen also notes that HUD has stated that: "A bare and conclusory statement of the hearing decision*, that does not let the participant know the basic reason for the decision*, will not satisfy the regulatory requirement." Section 8 Housing Assistance Payments Program; Existing Housing, 49 Fed. Reg. 12215, 12230 (Mar. 29, 1984) (emphasis supplied). Here, the basic reason for the decision—"failure to complete your inspection as required by Housing Choice Voucher rules"—was clearly identified. ECF No. 4-6, Exhibit F.
[69] ECF No. 4-6.

which included the parties' discussion at the hearing as well as the supporting documents from Ms. Olsen's file. And finally, the written decision makes clear that the hearing officer reviewed the "applicable sections of the Code of Regulations and DCHA policy" to confirm that the housing authority followed proper procedure.[70]

There are no facts or allegations in this case that suggest any confusion as to *who* violated *what* housing rule and *when* the violation occurred. Unlike in *Brantley*, there are no allegations to suggest a potential unidentified alternative basis for the termination of Ms. Olsen's Section 8 benefits or that the hearing officer's written decision was based on improper information. When presented with circumstances like these, district courts have routinely determined that "technical rules" such as requiring "that the decision maker must specifically mention a rule number or indicate the standard of proof" are "inconsistent with *Goldberg*'s refusal to require a full judicial opinion."[71] Additionally, such formalities are "unnecessary to demonstrate that 'the decisionmaker's conclusion as to the recipient's eligibility . . . rest[s] solely on the legal rules and evidence adduced at the hearing,' which is the purpose of the written decision according to *Goldberg*."[72] The written decision in this case clearly informed Ms. Olsen of the reason and basis for the termination decision. While its brevity could have been problematic under different facts, the allegations of the Complaint make it plain that greater length or detail were not constitutionally required here. Accordingly, the court finds, based on the allegations in Ms.

---

[70] *Id.*
[71] *Anderson v. Lowell Hous. Auth.*, No. 11-10580, 2012 WL 3965112, at *18 (D. Mass. Aug. 24, 2012); *see Loving v. Brainerd Hous. & Redevelopment Auth.*, No. 08-1349, 2009 WL 294289, at *8 (D. Minn. Feb. 5, 2009) (providing that rigidly requiring the housing agency to state the applicable rule regardless of whether the parties jointly understand what rule is at issue would be inconsistent with *Goldberg*'s general approval of flexible, informal hearing procedures).
[72] *Anderson*, 2012 WL 3965112, at 18 (quoting *Goldberg*, 397 U.S. at 271); *see also Nalubega v. Cambridge Hous. Auth.*, No. 12-10124, 2013 WL 5507038, at *21 (D. Mass. Sept. 30, 2013) (rejecting claim that decisions terminating Section 8 benefits were deficient because they did not cite specific regulations or state that they were based on a preponderance of the evidence).

Olsen's Complaint and the attached documents, that the hearing officer's written decision satisfied the necessary procedural due process requirements.

## IV. CONCLUSION

Having determined, based on the allegations in Ms. Olsen's Complaint and the attached documents, that the hearing officer's written decision satisfied the necessary procedural due process requirements, the court concludes that the Complaint fails to allege a plausible claim that the written decision affirming the termination of Ms. Olsen's Section 8 housing benefits violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution, federal law, or regulation. Accordingly, Defendant's motion to dismiss is GRANTED. If Plaintiff has a good faith basis to seek leave to amend her Complaint, she may so move within 30 days of this decision.

IT IS SO ORDERED.

DATED September 1, 2022.

BY THE COURT:

_____
David Barlow
United States District Judge